HONORABLE RICHARD A. JONES

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

HELEN CREEKMORE,

       Plaintiff,

   v.

U.S. BANK, N.A.,

       Defendant.

CASE NO. C09-561RAJ

ORDER

## I.  INTRODUCTION

This matter comes before the court on Defendant U.S. Bank's motion for summary judgment. Dkt. # 54.  The court heard from the parties at oral argument on August 11, 2010, and has considered their briefs and the accompanying evidence.  For the reasons stated below, the court DENIES the motion.

## II.  BACKGROUND

Helen Creekmore began working in U.S. Bank's human resources ("HR") department in 1996.  Until the 2008 incident that is the focus of this lawsuit, she was by all accounts a model employee.  She had consistently received favorable performance evaluations, and U.S. Bank had granted her every merit-based pay increase for which she was eligible.  She worked her way up the HR ladder.  No later than January 2008, she received a new job title that she viewed as a promotion.  Creekmore Depo. at 66.

Ms. Creekmore's job required her to work with U.S. Bank's branch operations regarding a host of HR issues, including investigations of employee misconduct, salary

ORDER – 1

1   issues, and employee relations support.  She also worked with branch employees

2   regarding compliance with U.S. Bank's ethics policies.  Although HR at U.S. Bank is a

3   separate "business line," or operating division, her work often required her to deal with

4   employees in other business lines.

5       Beginning in 2006, Ms. Creekmore reported directly to Janice Coonley, the HR

6   manager for U.S. Bank's western region.  Beginning in February 2008, Dale Jacobson

7   became Ms. Coonley's supervisor.  Jacobson Depo. at 5.

8       In the early afternoon of August 21, 2008, Ms. Creekmore arrived in her car at

9   U.S. Bank's Renton branch after spending the morning in Tukwila representing U.S.

10  Bank at a job fair.  She intended to spend only a short time at the Renton branch before

11  driving to Seattle to complete her workday.  She left a box containing U.S. Bank

12  documents on the floor in front of the back seat of her car.  She spent more time than she

13  expected inside the Renton branch, and did not return to her car until about 6:45 p.m.

14  She discovered many items out of place in her car, and the box was missing.  She

15  reported the theft immediately to building security, and then called Ms. Coonley.  In the

16  aftermath of the theft, Ms. Creekmore wrote a memo detailing her memory of the

17  contents of the box.  Droke Decl., Ex. L.  The box contained documents related to several

18  employee investigations, reports of issues raised via U.S. Bank's ethics line, outdated

19  salary increase data for a large group of U.S. Bank employees, unemployment

20  compensation documents, and a variety of U.S. Bank guidebooks, directories, and the

21  like.  Although no one ever recovered the stolen box, there is no evidence that its contents

22  were used to the detriment of anyone whose confidential information was stored therein.

23      On September 4, 2008, Ms. Coonley told Ms. Creekmore that she had been

24  terminated for violating U.S. Bank's policy requiring employees to safeguard confidential

25  information.  Mr. Jacobson and Ms. Coonley made the termination decision jointly,

26  although it is undisputed that Mr. Jacobson had ultimate authority to make the

27  termination decision.  Jacobson Depo. at 55-56 ("If Jan hadn't agreed with the decision,

28  ORDER – 2

1  and I was in a position to need to overrule, then yes, it would have been solely my

2  decision.  But ultimately we were in the same place.").[1]  Mr. Jacobson discussed his

3  termination decision with Jennie Carlson, Katie Lawler, and Rick Rushing.  Jacobson

4  Depo. at 53-54.  There is no suggestion, however, that any of these three individuals was

5  responsible for the decision to terminate Ms. Creekmore.

6          U.S. Bank's stated basis for terminating Ms. Creekmore was that leaving

7  confidential information in her car violated company policy.  There is no dispute that

8  U.S. Bank's Code of Ethics and Business Conduct requires employees to safeguard such

9  information, and states that "the improper release of information may result in

10  disciplinary action up to and including termination."  Droke Decl., Ex. K at 7.

11          There is also no dispute, however, that Ms. Creekmore is not the only U.S. Bank

12  employee to have left confidential U.S. Bank information in a personal vehicle.  The

13  record reflects that four other employees in the Seattle area have had confidential U.S.

14  Bank documents stolen from their vehicles or otherwise compromised.  The court will

15  discuss these four employees in its later analysis.  For now, a few observations suffice.

16  None of these other employees worked in the HR business line, and thus none of them

17  worked for Mr. Jacobson.  Each of these other employees was Caucasian; Ms. Creekmore

18  is African-American.  None of these other employees received discipline, much less

19  termination.

20          The question this case presents is whether Ms. Creekmore was fired because of her

21  race, rather than for the reason U.S. Bank has offered or any other lawful reason.  The

22  route by which Ms. Creekmore placed that question before the court is a single claim of

23  race-based termination in violation of the Washington Law Against Discrimination

24  ("WLAD").  U.S. Bank seeks to dispose of that claim on summary judgment.

---

[1] At oral argument, U.S. Bank insisted that the record contained evidence that Mr. Jacobson did
not have ultimate authority in the decision to terminate Ms. Creekmore.  It pointed to no
evidence in the record, however, and it offered no response when the court read Mr. Jacobson's
testimony refuting its assertion.

28  ORDER – 3

### III.  ANALYSIS

On a motion for summary judgment, the court must draw all inferences from the admissible evidence in the light most favorable to the non-moving party.  *Addisu v. Fred Meyer, Inc.*, 198 F.3d 1130, 1134 (9th Cir. 2000).  Summary judgment is appropriate where there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law.  Fed. R. Civ. P. 56(c).  The moving party must initially show the absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The opposing party must then show a genuine issue of fact for trial.  *Matsushita Elect. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  The opposing party must present probative evidence to support its claim or defense.  *Intel Corp. v. Hartford Accident & Indem. Co.*, 952 F.2d 1551, 1558 (9th Cir. 1991).  The court defers to neither party in resolving purely legal questions.  *See Bendixen v. Standard Ins. Co.*, 185 F.3d 939, 942 (9th Cir. 1999).

In employment discrimination cases, the *McDonnell Douglas* burden-shifting analysis augments the familiar summary judgment standard.  *Aragon v. Republic Silver State Disposal, Inc.*, 292 F.3d 654, 658 (9th Cir. 2002) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)).  Ms. Creekmore has not attempted to prove discriminatory intent through direct or circumstantial evidence, and thus the three steps of the *McDonnell Douglas* analysis are the route she must take to avoid summary judgment.  *Vasquez v. County of Los Angeles*, 349 F.3d 634, 640 (9th Cir. 2003).  She must offer evidence supporting a prima facie case that her termination was racially motivated; if she succeeds, the burden shifts to U.S. Bank to produce evidence of a lawful motive for terminating her; if U.S. Bank succeeds, Ms. Creekmore is obligated to produce evidence that U.S. Bank's stated lawful motive is pretext.  *Id.*  Although the *McDonnell Douglas* analysis evolved to address employment discrimination claims invoking federal law, Washington courts apply substantially the same standard to claims invoking the WLAD.  *Xieng v. Peoples Nat'l Bank of Wash.*, 844 P.2d 389, 392 (Wash. 1993) (applying Title

ORDER – 4

VII standards to WLAD disparate treatment claim); *Hill v. BCTI Income Fund-I*, 23 P.3d 440, 446 (Wash. 2001) ("Washington courts have largely adopted the federal protocol announced in *McDonnell Douglas* for evaluating motions for judgment as a matter of law.").

**A.     Ms. Creekmore Has Established a Prima Facie Case of Discrimination.**

A prima facie case of employment discrimination has four elements:  "(1) [the employee] belongs to a protected class, (2) [the employee] was performing according to [the] employer's legitimate expectations, (3) [the employee] suffered an adverse employment action, and (4) other employees with qualifications similar to [the employee's] were treated more favorably."  *Vasquez*, 349 F.3d at 640 (quoting *Godwin v. Hunt Wesson, Inc.*, 150 F.3d 1217, 1220 (9th Cir. 1998)).  In opposing summary judgment, an employee's evidentiary burden in establishing a prima facie case is not onerous.  *Aragon*, 292 F.3d at 659 ("[T]he requisite degree of proof necessary to establish a prima facie case for Title VII … on summary judgment is minimal and does not even need to rise to the level of a preponderance of the evidence.") (quoting *Wallis v. J.R. Simplot Co.*, 26 F.3d 885, 889 (9th Cir. 1994)).

Ms. Creekmore easily meets her burden of proof as to the first three elements of a prima facie case.  No one disputes that she is a member of a protected class or that her termination was an adverse employment action.  No one disputes, moreover, that until someone stole documents from her in August 2008, she was performing at or above U.S. Bank's expectations.  U.S. Bank asserts that her conduct that led to the theft was below its legitimate expectations.  That assertion is the parties' primary dispute, and one that will be the focus of Ms. Creekmore's claim of pretext at the third step of the *McDonnell Douglas* analysis.  The plaintiff's minimal burden in proving a prima facie case means that the employer's stated basis for termination is usually insufficient to overcome evidence that the employee was performing satisfactorily.  *Aragon*, 292 F.3d at 660 (noting "minimal prima facie burden of establishing that [employee] was qualified").

ORDER – 5

Ms. Creekmore has presented evidence from which a jury could conclude that her conduct leading to the theft was insufficient, in light of her exemplary employment record, to show that she was not performing up to expectations. She has also presented evidence that Ms. Coonley had long been aware that she transported U.S. Bank documents in her car, and never objected to the practice until the theft. Creekmore Decl. ¶¶ 6-7. Ms. Creekmore is not responsible for a third party's criminal conduct; she is only responsible for her conduct that put U.S. Bank's documents at risk. There is evidence that she had engaged in that conduct for years without consequence.

The parties have several disputes as to the fourth element of the prima facie case. U.S. Bank asserts that the fourth element requires Ms. Creekmore to prove that she was replaced by an employee who was not in her protected class. Ms. Creekmore cannot do so, because U.S. Bank replaced her with an African-American woman. Putting that threshold dispute aside, U.S. Bank contends that Ms. Creekmore cannot point to any similarly situated individual who was treated more favorably than her.

### 1.     U.S. Bank's Hire of an African-American Woman to Replace Ms. Creekmore Does Not Permit It to Avoid Liability.

U.S. Bank is mistaken in its apparent belief that it cannot be liable for discrimination because it hired an African-American to replace Ms. Creekmore. Most courts formulate the fourth element of the *McDonnell Douglas* prima facie case in terms that suggest that it makes no difference whether similarly-situated, favorably-treated employees belong to the plaintiff's protected class. *E.g.*, *Godwin*, 150 F.3d at 1220 (stating that a plaintiff must prove that "(4) other employees with qualifications similar to her own were treated more favorably"). Several courts have described the fourth element of the *McDonnell Douglas* prima facie case in a way that superficially supports U.S. Bank's contention. *E.g.*, *Coghlan v. Am. Seafoods Co.*, 413 F.3d 1090, 1094 (9th Cir. 2005) (stating that a plaintiff "*may*" prove a prima facie case "by showing that . . . (4) the job went to someone outside the protected class") (emphasis added); *St. Mary's Honor*

ORDER – 6

*Ctr. v. Hicks*, 509 U.S. 502, 506 (1993) (observing that plaintiff had proven prima facie case by "proving (1) that he is black . . . and (4) that the position remained open and was ultimately filled by a white man"). Most of these cases do not purport to *require* the plaintiff to prove that a person outside his or her protected class had been treated more favorably. They merely note that such evidence is sufficient to prove the fourth element of a prima facie case. Some cases, however, have stated the requirement in mandatory terms. *E.g.*, *Chuang v. Univ. of Cal. Davis*, 225 F.3d 1115, 1123 (9th Cir. 2000) ("[T]he plaintiff *must* show that . . . (4) similarly situated individuals outside his protected class were treated more favorably.") (emphasis added); *Chen v. Washington*, 937 P.2d 612, (Wash. Ct. App. 1997) (stating that a plaintiff "*must* demonstrate that he or she . . . (4) was replaced by someone not in the protected class") (emphasis added). Even those cases, however, neither depended on nor discussed whether the employer could avoid liability by favorably treating comparators in the same protected class as plaintiff. U.S. Bank admitted at oral argument that it knew of no court that had held that hiring or replacing a plaintiff with someone outside his or her protected class was a bar to liability.

When courts have squarely confronted the contention that replacing a plaintiff with a member of his or her protected class is a bar to liability, they have rejected it. In *Diaz v. AT&T*, 752 F.2d 1356, 1359 (9th Cir. 1985), the court reversed a district court that had adopted the position that U.S. Bank urges this court to adopt, that "the fourth element of *McDonnell Douglas* cannot be met unless the challenged position is filled by someone outside the plaintiff's protected class." The court emphasized that Title VII of the Civil Rights Act of 1964 "protects individuals, as well as groups, from discrimination on the basis of group characteristics." *Id.* at 1360. In *Perry v. Woodward*, the Tenth Circuit soundly dismissed the position that U.S. Bank advocates:

> The imposition of the inflexible rule advocated by Defendants is untenable because it could result in the dismissal of meritorious claims. Defendant's rule would preclude suits against employers who replace a terminated employee with an individual who shares her protected attribute only in an

ORDER – 7

attempt to avert a lawsuit. It would preclude suits by employers who hire and fire minority employees in an attempt to prevent them from vesting in employment benefits or developing a track record to qualify for promotion. It would also preclude a suit against an employer who terminates a woman it negatively perceives as a "feminist" and replaces her with a woman who is willing to be subordinate to her male co-workers or replaces an African-American with an African-American who is perceived to "know his place." Although each of these situations involves wrongfully-motivated terminations, under the rule advocated by the Defendants, the terminated employee would be unable to meet the prima facie burden. Such a result is unacceptable.

199 F.3d 1126, 1137 (10th Cir. 1999).[2]  This court rejects the contention that a plaintiff claiming discriminatory termination or failure-to-hire must show that someone outside his or her protected class was hired in his or her stead.

Even if U.S. Bank correctly interpreted precedent to require evidence of favorable treatment of comparators outside Ms. Creekmore's protected class, she has done provided that evidence.  U.S. Bank's focus on the African-American it hired to replace her ignores the four Caucasian employees who had confidential U.S. Bank documents stolen from their cars without receiving any discipline.  As the court will now discuss, it cannot ignore this evidence.

### 2.    A Jury Could Conclude that U.S. Bank Treated Employees Similarly Situated to Ms. Creekmore More Favorably.

As the court previously noted, Ms. Creekmore has introduced evidence of four U.S. Bank employees who, like her, lost confidential U.S. Bank information when it was stolen from their vehicles.[3]  Unlike Ms. Creekmore, none of these comparators received discipline, much less termination.  She contends that each of these individuals is a person

---

[2] Ms. Creekmore claims that U.S. Bank did not hire an African-American to replace her until it had received the first demand letter from her attorneys in this case.  The court need not reach this assertion.

[3] Ms. Creekmore also offered evidence regarding Ted Jones, a Seattle business banking officer whose U.S. Bank laptop was stolen from his office in U.S. Bank's main Seattle office building. The court focuses on the other comparators, because they left documents unattended in their vehicles.  The court need not decide at this time whether evidence about Mr. Jones is relevant.

ORDER – 8

1
2
3

similarly situated to her who was treated more favorably, thus satisfying her burden of proof as to the fourth element of the *McDonnell Douglas* prima facie case. U.S. Bank counters that these employees were not similarly situated to Ms. Creekmore.[4]

4
5
6

Robb Hawkins is a business banking officer in the Seattle area. In November 2006, he left two complete business client loan packages in his car while it was parked overnight at his home. The car and the documents were stolen.

7
8
9

Amanda O'Carolan is a branch manager in the Puget Sound area. Someone stole U.S. Bank documents containing account and social security numbers for about 35 U.S. Bank customers from her car in 2007.

10
11
12

M.K.,[5] a Seattle-area branch manager, had his briefcase stolen from his car, which was parked at a West Seattle parking garage. The briefcase contained U.S. Bank documents with information on more than 400 U.S. Bank customers.

13
14
15
16
17

Caroline Spall-Hicks was twice involved in incidents in which she left U.S. Bank documents in her car. In November 2005, a U.S. Bank laptop was stolen from her car, which was parked outside a restaurant. In late 2007 or early 2008, police impounded her car containing a U.S. Bank laptop and documents. Police released the car to the custody of her husband, from whom she was estranged.

18
19
20

In U.S. Bank's view, none of these employees are similarly situated to Ms. Creekmore. It is undisputed that none of them worked within the HR business line, and none of them had Mr. Jacobson or Mr. Coonley as supervisors. In addition, U.S. Bank

21
22
23
24
25

[4] Ms. Creekmore's brief in opposition to the summary judgment motion contains a lengthy section addressing U.S. Bank's alleged failure to search broadly enough during discovery for evidence of similarly situated individuals. Ms. Creekmore never moved to compel the production of such evidence, and her opposition brief did not contain a Fed. R. Civ. P. 56(f) request for additional discovery. Under these circumstances, the court views Ms. Creekmore's assertions of discovery misconduct as wholly irrelevant. The court rejects her contention that the court should infer that there are other comparators who U.S. Bank has not revealed.

26
27

[5] For reasons not apparent from the record, U.S. Bank seeks to keep M.K.'s full name confidential, whereas it has not objected to the naming of its other employees who have had documents stolen from them. The court will address U.S. Bank's effort to keep his name confidential in a separate order addressing Ms. Creekmore's motion to seal.

28

ORDER – 9

1    asserts that Ms. Creekmore had more confidential information than any of these

2    employees, that she should be held to a higher standard as an HR employee charged with

3    enforcing U.S. Bank's ethics code, and that she had no legitimate reason to have at least

4    some of the documents in her car.  Relying on language from *Vasquez*, U.S. Bank asserts

5    that "to be similarly situated, an employee must have the same supervisor, be subject to

6    the same standards, and have engaged in the same conduct."  349 F.3d at 641 n.17

7    (paraphrasing holding of *Hollins v. Atlantic Co., Inc.*, 188 F.3d 652, 659 (6th Cir. 1999)).

8        The "similarly situated" requirement is not as inflexible as U.S. Bank suggests.

9    As the court in *Bowden v. Potter* ably explained, there is no reason to read *Vasquez* to

10   impose rigid requirements on who may be considered "similarly situated."   308 F. Supp.

11   2d 1108, 1116-17 (N.D. Cal. 2008).  Another Ninth Circuit panel remarked on the

12   "minimal showing necessary to establish co-workers [are] similarly situated."  *Aragon*,

13   292 F.3d at 660 (paraphrasing *McGuinness v. Lincoln Hall*, 263 F.3d 49, 53-54 (2d Cir.

14   2001)).[6]

15       In this court's view, a jury could conclude that the comparators to whom Ms.

16   Creekmore points were similarly situated to her.  Ms. Creekmore offers evidence that Mr.

17   Jacobson and Ms. Coonley were aware of these other employees and their violations of

18   U.S. Bank policy.  She testified that she consulted with Ms. Coonley extensively

19   regarding Ms. Spall-Hicks.  Creekmore Depo. at 125-130.  Ms. Creekmore also testified

20   that she asked Ms. Coonley about Ms. Spall-Hicks, Ms. O'Carolan, and Mr. Hawkins

21   when Ms. Coonley delivered the news that U.S. Bank was terminating her.  Creekmore

22   Depo. at 148 ("I asked her, 'What about other people that this has happened to?'");

23   Creekmore Decl. ¶ 11 ("I specifically mentioned Robb Hawkins, Amanda O'Carolan and

---

[6] The "similarly situated" requirement is also not nearly as expansive as Ms. Creekmore believes.
In her briefing and at oral argument, she attempted to shift attention from the two decisionmakers
in this case by contending that "U.S. Bank" fired her.  The court finds no merit in this assertion.
There is no evidence whatsoever that there is a pattern or practice of discrimination at U.S. Bank,
and without such evidence, there is no basis to charge the two decisionmakers in this case with
knowledge of everything that has ever occurred in U.S. Bank's nationwide business operations.

ORDER – 10

Ted Jones and asked Ms. Coonley: 'Why is this not the same for other people?'").  A jury could infer that Ms. Creekmore would not have asked this question if her supervisors were not aware of these comparators.  Mr. Jacobson and Ms. Coonley deny any knowledge of these comparators (Jacobson Depo. at 63, 68-69; Coonley Depo. at 134), but on summary judgment, the court must credit Ms. Creekmore's evidence.  If her supervisors were aware of these comparators, then they were aware that other supervisors did not deem leaving U.S. Bank documents in a vehicle to be an offense warranting discipline, much less termination.  As a supervisor within a distinct business line, Mr. Jacobson was apparently free to deal with such offenses more severely than the comparators' supervisors.  He also could have believed that Ms. Creekmore put more confidential information at risk that those comparators, as U.S. bank argued in its motion.  Neither Ms. Jacobson nor Ms. Coonley offered these explanations for terminating Ms. Creekmore, however, they simply denied having any knowledge of comparators.  If a jury credits Ms. Creekmore's evidence, then it will necessarily question the credibility of Mr. Jacobson's and Ms. Coonley's disavowal of knowledge of the comparators.

As a final comment on the fourth element of Ms. Creekmore's prima facie case, the court observes that there is at least one other comparator who was treated more favorably than Ms. Creekmore: Ms. Creekmore herself.  There is evidence that Ms. Coonley knew that Ms. Creekmore often carried U.S. Bank documents in her car.  If Ms. Coonley did not discipline or even caution her despite her awareness of the practice, that suggests that Ms. Coonley did not view leaving U.S. Bank documents in a car as an offense warranting discipline.  If she changed her tune after Ms. Creekmore had the misfortune of having documents stolen from her car, then there is an inference that she did so because of new circumstances.  One circumstance the jury might consider significant is that Mr. Jacobson had only recently begun supervising Ms. Coonley.

Taken together, the evidence regarding the treatment of employees who leave U.S. Bank documents in their vehicles is far from conclusive.  A jury could credit Mr.

ORDER – 11

Jacobson and Ms. Coonley's explanation that they were unaware of any similar events involving other employees, and that even if they were aware, they took such violations more seriously than did supervisors in other business lines.  Alternatively, a jury could find their explanation incredible, and query why an offense for which no one else had ever been disciplined became a terminable offense for Ms. Creekmore.  On this record, Ms. Creekmore has adduced sufficient evidence that similarly situated individuals received more favorable treatment, discharging her burden to produce evidence supporting a prima facie case.

**B.    U.S. Bank Has Advanced a Legitimate, Lawful Reason For Terminating Ms. Creekmore.**

Mr. Jacobson and Ms. Coonley have offered a lawful reason for terminating Ms. Creekmore: her violation of U.S. Bank policy by storing confidential documents in her car.  Even if other supervisors at U.S. Bank apparently took similar conduct less seriously, neither this court nor a jury is permitted to second-guess this lawful decision.

**C.    Ms. Creekmore Has Offered Sufficient Evidence of Pretext.**

What a court and jury can second-guess, however, is whether the legitimate explanation U.S. Bank offers for Ms. Creekmore's termination is credible.  "Proof that the defendant's explanation is unworthy of credence is simply one form of circumstantial evidence that is probative of intentional discrimination, and it may be quite persuasive." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 123, 147 (2000).  The *Reeves* Court held that "[i]n appropriate circumstances, the trier of fact can reasonably infer from the falsity of the explanation that the employer is dissembling to cover up a discriminatory purpose."  *Id.*  Washington courts adopted the same standard in *Hill*:

> [W]e hold that while a *McDonnell Douglas* prima facie case, plus evidence sufficient to disbelieve the employer's explanation, will *ordinarily* suffice to require determination of the true reason for the adverse employment action by a fact finder in the context of a full trial, that will not always be the case.

ORDER – 12

23 P.3d at 448.

In this case, there is evidence from which a jury could conclude that U.S. Bank's explanation for terminating Ms. Creekmore is incredible. As the court observed in discussing the fourth element of Ms. Creekmore's prima facie case, a jury could believe Ms. Creekmore's testimony that Ms. Coonley and Mr. Jacobson knew that other employees had not been disciplined when documents were compromised in their vehicles. If so, a jury might question why Ms. Creekmore alone suffered harsh consequences. Moreover, her supervisors' denial of knowledge of any similarly situated individuals would adversely affect their credibility. A jury might wonder, moreover, after hearing the supervisors' testimony, why they were uninterested in determining whether others in similar circumstances had received similar discipline. On this record, the court finds sufficient evidence of pretext to discharge Ms. Creekmore's burden at the third step of the *McDonnell Douglas* analysis.

**D.      Even if a "Same-Actor Inference" Is Warranted, Ms. Creekmore's Evidence Is Sufficient to Overcome It.**

U.S. Bank asks the court to ratchet up Ms. Creekmore's evidentiary burden by applying the "same-actor inference." The *Coghlan* court attributed the same-actor inference to *Bradley v. Harcourt, Brace & Co.*, where the court held as follows:

> [W]here the same actor is responsible for both the hiring and the firing of a discrimination plaintiff, and both actions occur within a short period of time, a strong inference arises that there was no discriminatory action.

104 F.3d 267, 270-71 (9th Cir. 1996) (quoted in *Coghlan*, 413 F.3d at 1096). The *Coghlan* court charted a district court's course when applying the same-actor inference on summary judgment:

> The same-actor inference is neither a mandatory presumption (on one hand) nor a mere possible conclusion for the jury to draw (on the other). Rather, it is a "strong inference" that a court must take into account on a summary judgment motion. . . . [A court] must consider then, whether [a plaintiff] has made out the strong case of bias necessary to overcome this inference.

ORDER – 13

413 F.3d at 1098.  Although Washington law recognizes the same-actor inference, the court is aware of no published decision of a Washington court applying the inference in resolving a summary judgment motion.  In *Griffith v. Schnitzer Steel Indus., Inc.*, the court invoked the inference in setting aside a jury's verdict in favor of a discrimination plaintiff.  115 P.3d 1065, 1073-74 (Wash. Ct. App. 2005).  The same was true in *Hill*, where the court phrased the effect of the same-actor inference as follows:

> For a plaintiff to prevail [where the same-actor inference applies], the evidence must answer the obvious question: if the employer is opposed to employing persons with a certain attribute, why would the employer have hired such a person in the first place?

23 P.3d at 450 (finding that "[t]he record here fails even to suggest an answer").

In this case, there is a threshold dispute over whether the same-actor inference is applicable.  U.S. Bank points to three events: Ms. Creekmore's January 2008 promotion, her positive performance evaluation in March 2008, and her merit-based pay raise in March 2008.  U.S. Bank asserts that Mr. Jacobson and Ms. Coonley were responsible for each of these incidents of favorable treatment.  The record reveals numerous disputes that prevent the court from agreeing.  Ms. Creekmore's promotion occurred before Mr. Jacobson became her supervisor in February 2008.  There is no evidence that Mr. Jacobson had any role.  It is also questionable whether a jury would find that Ms. Coonley promoted her, because the promotion apparently occurred as part of a restructuring of the HR division, rather than as an effort to target Ms. Creekmore for favorable treatment.  The merit-based pay raise was an annual event; Ms. Creekmore had received similar raises in March of each of her prior years working for U.S. Bank. Although Ms. Coonley may have approved the pay raise, her approval may have been so routine that applying the same-actor inference to this act is not appropriate.  There is no evidence, moreover, that Mr. Jacobson had any role in the pay raise.  Ms. Coonley unquestionably was responsible for the favorable performance evaluation, but there is no evidence that Mr. Jacobson did more than discuss the evaluation with her after it

ORDER – 14

happened.  Jacobson Depo. at 6 ("I had a conversation with Jan Coonley in regards to the most recent performance review of Ms. Creekmore. . . . It was positive.").  The evaluation form has a space for the signature of a "2nd Level Manager," and it is blank.  Droke Decl., Ex. H.  Mr. Jacobson's name appears nowhere in the evaluation.

Under these circumstances, the applicability of the same-actor inference is in dispute.  No authority of which this court is aware discusses whether the court, on summary judgment, can resolve factual disputes about whether the inference applies at all.  The court assumes that such factual disputes should be left to the jury.  If not, the court would find on these facts that the same-actor inference is inapplicable to Ms. Creekmore's promotion and pay raise, and inapplicable as to Mr. Jacobson with respect to her performance evaluation.  As to the performance evaluation, the question before the court is why Ms. Coonley would have given Ms. Creekmore a favorable performance evaluation in March 2008 only to fire her for discriminatory reasons in September 2008.  One possible answer is the one that U.S. Bank advocates; that Ms. Creekmore's leaving documents unattended was the reason for her termination, not any discriminatory animus.  Another answer, however, is that Ms. Coonley deferred to Mr. Jacobson in the termination decision, preferring to curry favor with a new supervisor, or perhaps preferring not to reveal that she knew Ms. Creekmore regularly transported documents in her car.  The evidence is uncontradicted that Mr. Jacobson had ultimate authority to terminate Ms. Creekmore, and no previous favorable treatment for which he was responsible gives rise to a same actor inference.  For these reasons, the court holds that the applicability of the same-actor inference is a jury question in this case.  Even if it is not, the court holds that Ms. Creekmore's evidence is sufficient to overcome the inference at this stage of litigation.  *See Bradley*, 104 F.3d at 271 (noting that a plaintiff can "rebut" the inference).

ORDER – 15

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**IV.  CONCLUSION**

For the reasons stated above, the court DENIES Defendant's motion for summary judgment.  Dkt. # 54.

DATED this 12th day of August, 2010.

_____
The Honorable Richard A. Jones
United States District Judge

ORDER – 16